IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:20-CR-00053-M

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | ORDER |
| ) | |
| ANTONIO DEVON LYNCH, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on Defendant's pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [DE 33]. For the reasons contained herein, the motion is granted.

I. **Abbreviated Factual and Procedural History**

On June 6, 2020, Defendant was charged with committing four counts of Hobbs Act Robbery within the span of four days. [DE 1]. Pursuant to a written plea agreement, Defendant pled guilty to two of those counts. [DE 21]. On December 1, 2020, this court sentenced him to a total term of 120 months of imprisonment. [DE 30]. His expected release date as of this writing is May 4, 2028. *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 14, 2025).

On November 27, 2023, Defendant filed the pending motion for compassionate release. [DE 33]. He seeks his immediate release from federal custody or the commutation of his sentence to home confinement, arguing that his minor children's placement into foster care and the lack of other family members who could serve as a custodian constitute an extraordinary and compelling

reason for relief. *Id.* at 1, 3. In support of this contention, he submits several documents detailing the circumstances in which his children were placed into state custody. *See* [DE 33-4]; [DE 33-5]. A review of these documents reveals that following Defendant's arrest, the power of attorney over his minor children was transferred from Defendant to their maternal great-aunt, Charlita Mallard. [DE 33-4] at 6. Defendant's children lived with Ms. Mallard for some time, but in February 2022, she contacted state authorities and expressed that she was no longer willing to take care of Defendant's daughter, Destiny, who is reported to have severe behavioral issues and several medical diagnoses, including traumatic brain injury, a bleeding disorder, and a seizure disorder. *Id.* By March 2022, Ms. Mallard indicated she was unwilling to continue taking care of Defendant's son, Jaylin. *Id.* at 8. State authorities attempted to secure placement of Defendant's children with other relatives but were unable to do so.[1] *Id.* Ultimately, both children were committed to the custody of the Pasquotank County Department of Social Services ("DSS"). [DE 33-4] at 2; [DE 33-5] at 4.

The United States filed a response in opposition to the pro se motion. [DE 41]. The matter is now ripe for review.

## II.    Legal Standards

Typically, a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "Congress provided an exception to that general rule . . . which

---

[1] The childrens' biological mother is deceased. The State contacted, or attempted to contact, the following individuals regarding the childrens' placement. *See* [DE 33-4] at 8. The State called but was unable to make contact with Defendant's brother, Michael Lynch. The childrens' stepmother, Tasha Lynch, had previously taken care of both children but reported that she was presently unwilling to serve as a placement resource due to Destiny's behavior and medical needs. Rhonda Bourne, a maternal great-aunt, stated that she would like to help but could not due to the recent death of her spouse. Another great-aunt, Carol Manning, reported her apartment was too small to house the children. The State also attempted to contact a great-uncle, Tony Cutler, and the paternal grandmother, Barbara Austin, but was unable to secure a response.

2

permits courts to reduce a sentence or permit immediate release based on extraordinary and compelling reasons warranting such relief." *United States v. Centeno-Morales*, 90 F.4th 274, 278 (4th Cir. 2024) (quoting 18 U.S.C. § 3582(c)) (cleaned up). Once, these requests could only come from the Director of the Federal Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (2002). Following the passage of the First Step Act, however, federal inmates were authorized to directly file motions for compassionate release once they "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [at] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; *see also Centeno-Morales*, 90 F.4th at 279.

In considering these motions, a district court must conduct a two-step analysis. *Id.* First, the court must determine whether a defendant is eligible for a sentence reduction because he or she has demonstrated extraordinary and compelling reasons for release. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). Any potential sentence reduction must also be consistent with applicable policy statements issued by the United States Sentencing Commission, and the Commission has promulgated a non-exhaustive list of circumstances constituting acceptable "extraordinary and compelling" rationales. *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); U.S.S.G. § 1B1.13(b). Because this list is non-exhaustive, a district court "has authority to consider any 'extraordinary and compelling reason' that a defendant might raise, regardless of the Sentencing Commission's pronouncements or . . . definitions." *United States v. Hall*, No. 09-CR-0520, 2024 WL 1485724, at *1 (D. Md. Apr. 5, 2024) (citing *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)); *see also United States v. Johnson*, -- F.4th --, 2025 WL 1872486, at *3 (4th Cir. 2025) (holding that "there is no exhaustive list as to what may be considered extraordinary and compelling" and that a district court

3

may consider any reason so long as it is "similar in gravity" to those outlined in § 1B1.13(b)).

Second, if the court finds there are extraordinary and compelling reasons for a sentencing modification, it must then evaluate the relevant § 3553(a) sentencing factors. *Centeno-Morales*, 90 F.4th at 279. The defendant bears the burden of showing why the § 3553(a) factors justify a modified sentence, *id.*, and a court may deny the defendant's motion based on its own analysis of the factors, even if an extraordinary and compelling circumstance exists. *See United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

### III. Analysis

Based on the requirements of § 3582(c)(1)(A), Defendant's motion requires the court to consider (1) whether he exhausted his administrative remedies; (2) if so, whether extraordinary and compelling reasons exist warranting a reduction of his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. The record reflects that Defendant has exhausted the available administrative remedies. [DE 33-2]; [DE 33-3].

   a. Extraordinary and Compelling Reasons

Defendant argues that his need to serve as his children's primary caregiver is an extraordinary and compelling reason for relief. [DE 33] at 3. The court agrees.

The Guidelines counsel that familial circumstances can constitute an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(3). As relevant here, such circumstances exist upon "[t]he death or incapacitation of the caregiver of the defendant's minor child." § 1B1.13(b)(3)(A). Generally, courts have only granted compassionate release based on family circumstances when "a defendant is the sole available caregiver for his or her minor child." *United States v. Bardwil*, No. 3:20-CR-436, 2023 WL 8421093, at *2 (W.D.N.C. Dec. 4, 2023)

4

(quotation omitted). Courts have found that compassionate release is inappropriate when "there may be relative caregivers available to take custody" of the child or when granting the motion would not result in the defendant assuming those responsibilities. *United States v. Sanchez*, No. 2:20-CR-10, 2024 WL 1653769, at *2 (W.D. Va. Apr. 16, 2024) (finding that compassionate release was inappropriate in part because other relatives were available to care for the minor child).

The United States contends that Defendant has not demonstrated a basis for relief under the "family circumstances" policy statement because Ms. Mallard is not incapacitated, and other family members are available to serve as a caregiver. DE 41 at 8; *see also* § 1B1.13(b)(3). On its face, this is correct. The Guidelines do not define "incapacitated," but district courts have frequently looked to BOP Program Statement 5050.50 for guidance. *See United States v. Mahone*, No. 5:12-cr-27, 2025 WL 495376, at *4 (W.D. Va. Feb. 13, 2025) (recognizing that the BOP policy statement is not binding, but looking to it for guidance); *United States v. Blue*, No. 7:11-CR-135-D, 2021 WL 5500498, at *4 (E.D.N.C. Nov. 23, 2021) (same); *United States v. Vaughn*, Nos. 7:10-CR-17, 7:19-CR-25, 2025 WL 84215, at *4 n.4 (W.D. Va. Jan. 13, 2025) (same). This statement defines "incapacitation," in relevant part, as "a serious injury, or a debilitating physical illness," which renders a caregiver "completely disabled." Statement 5050.50 at 10. Here, Ms. Mallard has not been shown to meet these criteria. The DSS indicated that Ms. Mallard self-reported "physical health issues such as rheumatoid arthritis and diabetes," DE 33-4 at 6, but the effects of these conditions have not rendered her completely disabled. In fact, following the disclosure of these conditions on February 8, 2022, Ms. Mallard continued to care for Jaylin through least February 19, 2022, when he left her home to live with a neighbor. *See id.* at 8. The record reflects that Ms. Mallard simply chose to stop caring for Defendant's children because of the burden it placed on her.

5

Further, several other family members appear available to serve as custodians. Indeed, both Ms. Mallard and the childrens' stepmother live in North Carolina and have previously taken care of Defendant's children. Though they, and several other family members, refuse to do so now, they are available for purposes of the First Step Act. *See e.g.*, *Blue*, 2021 WL 5500498, at *3–4 (finding that a child's caregiver is not "incapacitated" for purposes of the First Step Act where DSS determines that they are no longer fit to serve as caretakers); *United States v. Delgado*, 752 F. Supp. 3d 439, 442 n.1 (W.D.N.Y. 2024) (finding that a child's mother was "available" even though she did not want to continue with her parental responsibilities).

There is not, however, an "exhaustive list as to what may be considered extraordinary and compelling." *United States v. Johnson*, -- F.4th --, 2025 1872486, at *3 (4th Cir. 2025). Indeed, § 1B1.13(b)(5) provides that extraordinary and compelling reason may exist when "[t]he defendant presents any other circumstance or combination of circumstances," whether "considered by themselves or together with any of the reasons described in paragraphs (1) through (4)," so long as they are "similar in gravity." *See id.* (holding that district court did not abuse its discretion in finding that a significant sentence disparity between co-defendants warranted relief under the First Step Act). In sum, though the circumstances presented do not neatly fall within the Guideline's "family circumstances" policy statement, the court retains the discretion to determine whether they are sufficiently analogous to warrant relief.

Here, the court finds that Defendant has demonstrated circumstances that are "similar in gravity" to those outlined in § 1B1.13(b)(3). "The animating principle of the Family Circumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." *United States v. Lisi*,

6

440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020). Under normal circumstances, the existence of another caregiver is sufficient to alleviate these concerns, as the child's needs are capable of being cared for by an individual other than the defendant. This principle typically remains in full effect even when other potential caregivers do not ultimately assume custody of the child, and he or she is committed the care of the state. *See Blue*, 2021 WL 5500498, at *4. In this case, however, the court is not convinced that Destiny's medical needs—which, as described above, include a traumatic brain injury, a bleeding disorder, and a seizure disorder—are cared for in state custody in a way that is analogous to a familial custodian. The court casts no aspersion on the DSS or to the attention it gives to its charges, but according to a child protective services ("CPS") report, it has had difficulty in finding secure placement for Destiny due to her "extensive medical needs." DE 33-4 at 7. For example, on February 19, 2022, Destiny was placed in a level two therapeutic foster home, but within a month, her foster parent submitted a termination notice, citing the difficulty in caring for Destiny's complications, which, at that time, also included suicidal ideation. *Id.* In sum, the court finds that this is not a run-of-the-mill foster care case, which typically does not constitute an extraordinary and compelling circumstance. Instead, the court is convinced that Defendant's daughter will continue to have difficulty in addressing her severe medical and behavior needs absent her father's presence.

The court stresses that this order should not be construed to support the proposition that the placement of an inmate's child into foster care constitutes an extraordinary and compelling reason so long as other family members refuse to assume custody. Neither does the court suggest that such circumstances exist merely upon a showing that a defendant is uniquely situated to care for his child's complicated medical needs. The court's finding in this case is predicated on the unique facts before it, namely that (1) both of Defendant's children have been committed to state

7

custody; (2) Defendant's daughter suffers from severe medical complications that inhibit the ability of the State to adequately care for her; (3) the children's biological mother is deceased, and the remaining family members refuse to assume custody based on the aforementioned medical and behavioral issues; (4) these complications have resulted in escalating behavioral issues in Defendant's son; and (5) Defendant has previously held custody over both his children. The court finds that these factors, considered in conjunction, constitute an extraordinary and compelling reason for relief that is "similar in gravity" to those outlined in § 1B1.13(b)(1)–(4). *See* § 1B1.13(b)(5).

  b. Section 3553(a) Factors

Defendant has demonstrated an extraordinary and compelling reason for relief, but the court must still determine whether the relevant § 3553(a) factors counsel against a reduced sentence. Here, the court finds that they do not.

Though the underlying conduct in this case is undoubtedly serious, the court finds that it was not so egregious as to counsel against a sentence reduction under the present circumstances. Defendant was sentenced in connection with two robberies that occurred in September 2019. During the first, Defendant threatened a Fuel Doc clerk with a knife and demanded that he surrender the cash in his register. DE 26 at ¶ 7. During the second, Defendant entered a Sheetz gas station, brandishing a BB gun and again demanding cash from the register. *Id.* at ¶ 8. When the employee advised that she could not open the register without assistance of her manager, Defendant led her to the back office, retrieved her supervisor and another employee, and returned to the register. *Id.* The court notes, as it did at sentencing, that the second robbery is somewhat mitigated by the use of a BB gun, which lacks the capacity to accidentally discharge and kill someone. Further, as Defendant has previously acknowledged, these actions were fueled by an

8

Case 4:20-cr-00053-M    Document 42    Filed 07/15/25    Page 8 of 10

attempt to fund his "crack habit." *Id.* at ¶ 10. Defendant has been in custody since October 1, 2019, and this forced period of sobriety mitigates the risk that his release would result in a chemically induced motivation to obtain cash funds through unlawful means.

The court also notes that although Defendant has an extensive criminal history, it largely consists of non-violent theft offenses. *See id.* at ¶ 17–30. Defendant's present period of incarceration is far longer than anything Defendant has ever experienced. *See id.* Accordingly, the court finds that a reduced sentence would both promote respect for the rule of law and provide for specific deterrence to Defendant.

Finally, the court finds that a reduced sentence would not unduly put the public at risk of future crime by the defendant. The United States emphasizes that while incarcerated, Defendant has incurred three infractions, thus evidencing a lack of respect for the rule of law. DE 41 at 11. However, upon review of the submitted materials, it appears these relatively minor infractions were all issued between April 28, 2021, and July 19, 2022. DE 41-1. For the following two years (to the date on which the report was generated), no other misconduct is documented. *See id.* Further, the court intends to modify Defendant's conditions of supervised release to require that he serve the three-year term on home detention. This additional layer of supervision will work to ensure that Defendant conforms his conduct to the law.

In sum, the relevant § 3553(a) factors justify a modified sentence.

### IV. Conclusion

For these reasons, Defendant's pro se Motion for Compassionate Release [DE 33] is GRANTED. The term of imprisonment imposed on December 1, 2020, is hereby REDUCED to a sentence of time served. Further, in addition to the conditions of supervised release originally imposed, the court ORDERS that Defendant shall abide by all conditions and terms of the home

9

detention program for a period of three consecutive years. The defendant shall be restricted to his residence at all times except for pre-approved and scheduled absences for employment, education, religious activities, treatment, attorney visits, court appearances, court obligations, or other activities as approved by the probation officer. The court notes that special weight should be given to those activities that relate to care of the defendant's minor children. The defendant shall submit to Radio Frequency (RF) monitoring and abide by all program requirements, instructions and procedures provided by the supervising probation officer. The defendant shall pay for location monitoring services as directed by the probation officer.

SO ORDERED this **15th** day of July, 2025.

*Richard E. Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE